UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| GEORG F.W. SCHAEFFLER and BERNADETTE SCHAEFFLER, | § § § § | |
| Plaintiffs, | § § | Case No. 3:15-CV-4090-M |
| v. | § § | |
| UNITED STATES OF AMERICA, | § § | |
| Defendant. | § § § | |

## MEMORANDUM OPINION AND ORDER

Before the Court is the Motion to Dismiss of the Defendant United States [ECF No. 28]. For the reasons stated below, the Motion is **GRANTED**.

### I.  INTRODUCTION

On December 30, 2015, Plaintiffs Georg F.W. Schaeffler and Bernadette Schaeffler filed this action for the refund of federal income taxes paid by Plaintiffs for the taxable year ending December 31, 2002, and for related statutory interest for an alleged overpayment. Compl. ¶ 1. [ECF No. 1]. Plaintiffs were previously married, and filed a joint income tax return for the 2002 tax year on or about October 15, 2003. *Id.* ¶ 5, 10. On April 10, 2013, Plaintiffs filed a claim with the IRS for the 2002 tax year, requesting a refund of $5,170,760. *Id.* ¶ 12. Broadly speaking, Plaintiffs allege they are entitled to a refund on account of a redetermination by German authorities of Georg Schaeffler's German tax liability, which Plaintiffs claim results in additional foreign tax credits available for use on Plaintiffs' 2002 federal income tax return and for carry forward of additional minimum tax credits. *Id.* ¶ 11.

On August 5, 2016, the parties filed their Joint Report Regarding Contents of Scheduling Order, in which the Defendant asserted that the Court lacks subject matter jurisdiction because Plaintiffs filed their claim for refund outside the applicable statute of limitations. ECF No. 22 at 3–4. On August 15, 2016, the Court directed the parties to address the threshold issue of subject matter jurisdiction [ECF No. 23], and on September 9, 2016, Defendant filed its Motion to Dismiss pursuant to Federal Rule of Civil Procedure 12(b)(1).

## II. LEGAL STANDARDS

### a. SUBJECT MATTER JURISDICTION

Motions filed under Rule 12(b)(1) of the Federal Rules of Civil Procedure challenge the subject matter jurisdiction of the district court to hear a case. Fed. R. Civ. P. 12(b)(1). Federal subject matter jurisdiction is limited; federal courts may entertain only those cases involving a question of federal law or those where parties are of diverse citizenship. *See* 28 U.S.C. §§ 1331, 1332. They "must presume that a suit lies outside this limited jurisdiction, and the burden of establishing federal jurisdiction rests on the party seeking the federal forum." *Howery v. Allstate Ins. Co.*, 243 F.3d 912, 916 (5th Cir. 2001). Federal courts have original jurisdiction over claims when a complaint states claims arising under federal law. *Id.* § 1331; *Ky. Fried Chicken Corp. v. Diversified Packaging Corp.*, 549 F.2d 368, 392 (5th Cir. 1977).

Lack of subject matter jurisdiction may be found based on any one of three considerations: (1) the complaint alone; (2) the complaint supplemented by undisputed facts evidenced in the record; or (3) the complaint supplemented by undisputed facts, plus the court's resolution of disputed facts. *Barrera–Montenegro v. United States*, 74 F.3d 657, 659 (5th Cir. 1996). A motion to dismiss based on the complaint alone presents a "facial attack" that requires the court to decide whether the allegations in the complaint, presumed to be true, sufficiently

state a basis for subject matter jurisdiction. *See Paterson v. Weinberger*, 644 F.2d 521, 523 (5th Cir. 1998); *Rodriguez v. Tex. Comm'n on the Arts*, 992 F. Supp. 876, 878 (N.D. Tex. 1998) (citation omitted). Facial attacks are usually made early in the proceedings. *Paterson*, 644 F.2d at 523. However, if the Defendant supports the motion with evidence, then the attack is "factual," and "no presumptive truthfulness attaches to plaintiff's allegations, and the existence of disputed material facts will not preclude the trial court from evaluating for itself the merits of jurisdictional claims." *Williamson v. Tucker*, 645 F.2d 404, 413 (5th Cir. 1981) (en banc). A factual attack may occur at any stage of the proceedings. *Menchaca v. Chrysler Credit Corp.*, 613 F.2d 507, 511 (5th Cir. 1980). Regardless of the nature of the attack, the party asserting federal jurisdiction continually carries the burden of proof to show it exists. *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001).

### b. TAXPAYER REFUND CLAIMS

The doctrine of sovereign immunity bars suit against the United States unless it has expressly consented to be sued. *United States v. Mitchell*, 445 U.S. 535, 538 (1980). In 28 U.S.C. § 1346(a)(1), the United States has consented to be sued for taxes improperly assessed or collected, but only if the plaintiff complies with the jurisdictional requirements set forth in 26 U.S.C. § 7422.

The timely filing of a refund claim with the IRS is a jurisdictional prerequisite to suit in a federal district court. 26 U.S.C. § 7422(a) ("No suit or proceeding shall be maintained in any court for the recovery of any internal revenue tax . . . until a claim for refund or credit has been duly filed with the Secretary . . . ."). Section 6511 of the Internal Revenue Code (the "Tax Code") contains two separate provisions for determining timeliness of a refund claim. *Id.* § 6511; *Comm'r v. Lundy*, 516 U.S. 235, 239–40 (1996). Under § 6511(a), a claim for a tax

refund "shall be filed by the taxpayer within 3 years from the time the return was filed or 2 years from the time the tax was paid," whichever is later. Section 6511(b) defines two "look-back" periods. First, if the claim is filed "within 3 years from the time the return was filed," then the taxpayer is entitled to a refund of "the portion of the tax paid within the 3 years immediately preceding the filing of the claim." 26 U.S.C. § 6511(b)(2)(A) (incorporating by reference § 6511(a)). Second, if the claim is not filed within that 3-year period, then the taxpayer is entitled to a refund of only that "portion of the tax paid during the 2 years immediately preceding the filing of the claim." *Id.* § 6511(b)(2)(B) (incorporating by reference § 6511(a)). Section 6511(3)(A) provides a special 10-year limitations period for refund claims relating to foreign tax credits. *Id.* § 6511(3).

### c. FOREIGN TAX CREDITS, ALTERNATIVE MINIMUM TAX, AND MINIMUM TAX CREDITS

The purpose of the Internal Revenue Code's foreign tax credit provisions is to reduce international double taxation. *Compaq Comput. Corp. & Subsidiaries v. Comm'r*, 277 F.3d 778, 786 (5th Cir. 2001). Section 901 of the Tax Code generally provides a foreign tax credit for the amount of creditable foreign taxes paid or accrued. 26 U.S.C. § 901.

Alternative minimum tax (AMT) is separate from, and in addition, to regular income tax. 26 U.S.C. § 55(a); *Merlo v. Comm'r*, 492 F.3d 618, 620 (5th Cir. 2007). The AMT was enacted to "ensure that high-income taxpayers cannot avoid significant tax liability through the use of exclusions, deductions, and credits." *Merlo*, 492 F.3d at 620. AMT is applied to an expanded income base known as alternative minimum taxable income, which is calculated by eliminating tax relief given to the taxpayer under the regular income tax regime. § 55(b)(2); *Merlo*, 492 F.3d at 620. If a taxpayer's tentative minimum tax—calculated by imposing AMT rates on the

4

alternative minimum taxable income—is more than the regular income tax, the taxpayer pays the difference as AMT. § 55(a).

Importantly, a taxpayer who pays AMT is entitled to use some or all of that amount as a credit against regular income tax, referred to as the "minimum tax credit." § 53(a). The minimum tax credit for a given taxable year is limited to the excess of the taxpayer's regular tax liability, reduced by the sum of certain allowed credits, over the taxpayer's tentative minimum tax liability for that year. § 53(c). The minimum tax credit can be applied to reduce regular income tax—and is considered used up, or "absorbed"—to the extent that regular income tax exceeds the tentative minimum tax for that year. Unabsorbed minimum tax credits can be carried forward indefinitely to future tax years; if a taxpayer does not use all of the credit in one year, the credit may be aggregated with other credits carried forward and used to reduce tax liabilities in the future.[1]

### III. PLAINTIFFS' REFUND CLAIM

Plaintiffs seek a refund of $5,170,760 for taxes paid for the 2002 tax year. Compl. ¶ 17. Plaintiffs' amended tax returns filed for the 2001 and 2002 tax years form the basis of their refund claim. *Id.* ¶ 16.

#### a. PLAINTIFFS' THIRD AMENDED 2001 RETURN

Plaintiffs filed their joint 2001 income tax return on Form 1040 on October 15, 2002. Def. App. at 1 [ECF No. 28-1 at 1]. On or about April 7, 2012, Plaintiffs filed their third amended income tax return for the 2001 tax year. *Id.* at 2, 77; Compl. ¶ 16. Plaintiffs allege that based on the figures in their original tax return filed for 2001, they were not subject to AMT. Compl. ¶ 16. The revisions made in the third 2001 amended return are summarized in the

---

[1] 1 Mertens Law of Fed. Income Tax'n § 2A:137 (2017).

5

following table. The revisions made to "LINE 7, Column B" refer to the net change made to credits claimed in Plaintiffs' 2001 tax return:

| Summary of Revisions – LINE 7, Column B [Third Amended 2001 Return] | |
|---|---:|
| A. Decrease in Foreign Tax Credit Carryover to 2001 – Fourth 2000 Amended Return | ($218,883) |
| B. Increase in Eligible Foreign Tax Credit for 2001 | $5,840,331 |
| Subtotal | $5,621,448 |
| C. Reduction in Minimum Tax Credit for 2001 | ($3,146,597) |
| Net Change | $2,474,851 |

Def. App. at 0021.

The changes made in the third amended 2001 return reflected additional German tax paid by Plaintiffs in 2001, which increased their eligible foreign tax credits and resulted in the Plaintiffs being subject to AMT in the amount of $2,474,851 for the 2001 tax year. Def. App. at 19, 21, 25, 34–35, 77. Plaintiffs allege that these changes did not alter their tax liability for 2001, because the increase in AMT was offset by an increase in the amount of foreign tax credit claimed. *Id.* at 21. Thus, Plaintiffs experienced no net change in tax payable or refundable as a result of their third amended 2001 return. *Id.*

For this litigation, the significance of Plaintiffs' third amended 2001 return was their being subject to AMT in the amount of $2,474,851, which was then eligible to be carried forward to future years as a minimum tax credit against future tax liabilities. Additionally, the foreign tax credits claimed by Plaintiffs in their third amended 2001 return offset minimum tax credits that had been previously absorbed in 2001, thus increasing the total amount of minimum tax credit carryforward from prior years to $4,288,674. Thus, combining the revised minimum tax credit carryforward from prior years with the 2001 AMT eligible to be carried forward as a minimum tax credit, Plaintiffs reported a total of $6,763,525 in minimum tax credit carried forward to 2002:

6

| | |
|---|---|
| Reported 2001 Minimum Tax Credit Carryforward from Prior Years | $4,288,674 |
| Reported 2001 Alternative Minimum Tax | $2,474,851 |
| Reported Minimum Tax Credit Carried to 2002 | $6,763,525 |

Def. App. at 0021, 77.

### b. SECOND AMENDED 2002 RETURN

On or about April 22, 2013, Plaintiffs filed their second amended return for the 2002 tax year ("second amended 2002 return"). Def. App. at 0006; Compl. ¶ 12. Plaintiffs alleged three changes to foreign tax liabilities, which they claim altered their eligible foreign tax credit. Plaintiffs further applied the $6,763,525 minimum tax credit calculated as a result of the amendments made in the third amended 2001 tax return. Plaintiffs allege that these amendments resulted in a net overpayment of $5,170,760. The amendments made in the second amended 2002 return are summarized in the following table:

| Summary of Second Amended 2002 Return Revisions | |
|---|---|
| A. Increase in Eligible Foreign Tax Credit related to Schaeffler Immobilien[2] | $142,902 |
| B. Increase in Eligible Foreign Tax Credit – German Personal Income Tax | $1,166,186 |
| C. Reduction in Eligible Foreign Tax Credit for 2002 – Foreign Partnership | ($2,901,853) |
| Subtotal | ($1,592,765) |
| D. Increase in Minimum Tax Credit for 2002 | $6,763,525 |
| Net Change | $5,170,760 |

Compl. ¶ 17; Def. App. at 77.

### I. DISCUSSION

Plaintiffs seek a refund of $5,170,760, which they allege is the result of a net overpayment of tax in 2002. The Government responds that Plaintiffs' refund claim is

---

[2] The Complaint identifies Schaeffler Immobilien as a German entity that Mr. Schaeffler used to conduct foreign rental activity. Compl. ¶ 13.

jurisdictionally barred by the applicable statute of limitations under the Tax Code, and that accordingly, the Court lacks subject matter jurisdiction.

The facts in this case are not in dispute.[3] Undisputed evidence presented by the Government shows that the Plaintiffs filed their original 2002 tax return on October 15, 2003, and paid the tax assessed the same day. Def. App. at 0005 [ECF No. 28-1 at 5]. The statute of limitations under § 6511 began to run, therefore, on October 15, 2003. *See Chaney v. United States*, 45 Fed. Cl. 309 (Fed. Cl. 1999) (calculating the limitations period for filing a refund claim from the filing of the original return); *see also United States v. Brockamp*, 519 U.S. 347, 354 (1997) ("Congress did not intend the 'equitable tolling' doctrine to apply to § 6511's time limitations."); *Zellerbach Paper Co. v. United States*, 293 U.S. 172, 180 (1934) ("[A]n amendment or supplement to a return already upon the files . . . does not toll a limitation which has once begun to run."). The Complaint alleges that Plaintiffs filed their refund claim for the 2002 tax year on or about April 10, 2013. Compl. ¶ 12.

If the default 3-year limitations period under § 6511(a) applies, Plaintiffs' refund claim is clearly barred. The first issue to be resolved, therefore, is whether Plaintiffs' claim falls within the foreign tax credit exception under § 6511(d)(3)(A), which provides for a 10-year statute of limitations. The dispute primarily concerns the meaning of the phrase "attributable to": the longer limitations period is available only if the refund claim "relates to an overpayment *attributable to* any taxes paid or accrued to any foreign country" eligible for a foreign tax credit. 26 U.S.C. § 6511(d)(3)(A) (emphasis added).

---

[3] In its Motion to Dismiss, the Government makes numerous factual allegations supported by evidence it attaches to its Motion, namely certified IRS records, Plaintiffs' sworn answers to interrogatories, and copies of Plaintiffs' signed tax returns and amendments. In their Response, Plaintiffs do not dispute the facts alleged by the Government nor introduce any facts to the contrary. Therefore, in resolving this jurisdictional dispute, the Court considers the Complaint supplemented by undisputed facts evidenced in the record. *See Barrera–Montenegro*, 74 F.3d at 659.

The Government argues that Plaintiffs' second amended 2002 return resulted in a net reduction in their eligible foreign tax credit, which, standing alone, would have resulted in an underpayment for 2002, rather than an overpayment. "[B]ut for the increased minimum tax credit," the Government maintains, Plaintiffs "would have owed additional tax for 2002 as the result of a reduction in their 2002 German tax liabilities that reduced their allowable foreign tax credits in that year." ECF No. 28 at 18. Therefore, the Government argues, Plaintiffs' claimed overpayment in 2002 is not the result of amendments to their 2002 foreign tax credits, and thus is not "attributable to any taxes paid or accrued to any foreign country" so as to fall under the 10-year limitations period of § 6511(d)(3)(A). Instead, the alleged overpayments in 2002 were the result of an increased minimum tax credit for 2002, which is subject to the default 3-year statute of limitations provided for in § 6511(a), and is therefore barred. Plaintiffs respond that the clause "attributable to" should be read broadly so as to encompass Plaintiffs' increased minimum tax credit carryforward from 2001. The issue presented is whether the phrase "attributable to" in § 6511(d)(3)(a) is broad enough to encompass a net overpayment due to an adjusted minimum tax credit, in an amended return that also adjusted foreign tax credits that, standing alone, would have resulted in an underpayment.

In *Electrolux Holdings, Inc. v. United States*, 491 F.3d 1327 (Fed. Cir. 2007), the Federal Circuit considered the meaning of "attributable to" in § 6511(d)(2)(A), which provides a special limitations period for refunds for overpayments "attributable to a net operating loss carryback[4] or a capital loss carryback." In *Electrolux*, the plaintiff sought a refund for an overpayment in 1995

---

[4] A "carryback" is an "income-tax deduction ([especially] for a net operating loss) that cannot be taken entirely in a given period but may be taken in an earlier period ([usually] the previous three years)." *Black's Law Dictionary* (10th ed. 2014).

9

which was caused by a capital loss carry*over*[5] to 1995 that had resulted from a net capital loss in 1994. 491 F.3d at 1331. Under the default three-year statute of limitations, plaintiff's refund claim for 1995 was barred, and thus the plaintiff sought to apply the special limitations period in § 6511(d)(2)(A) for refunds attributable to a capital loss carryback. *Id.* The plaintiff argued that although the capital loss carryover to 1995 was a cause of the overpayment, there was an additional cause—a carryback to 1993 of the 1994 capital loss—and that the 1995 overpayment could be traced to the carryback to 1993. *Id.* The controlling section of the Tax Code requires a taxpayer to carry a capital loss back before carrying any remaining amount forward as a carryover, and thus the plaintiff contended "that both the existence and the amount of the 1995 carryover could only have been determined by reference to the earlier carrybacks." *Id.* In other words, the *Electrolux* plaintiff argued that although the carryover of capital loss in 1994 was the cause of the 1995 overpayment, the amount of the capital loss in 1994 eligible to be carried forward was, in turn, caused by a carryback in 1993, and therefore the plaintiff should be able to take advantage of a special limitations period that is "attributable to . . . a capital loss carryback." § 6511(d)(2)(A).

The Federal Circuit has noted that "[t]he phrase 'attributable to,' though it appears in many provisions of the Internal Revenue Code, is not defined anywhere in the Code and has no special technical meaning under the tax laws," and thus should be construed according to its plain meaning. *Electrolux*, 491 F.3d at 1330 (citing *Stanford v. Comm'r*, 152 F.2d 450, 458 (5th Cir. 1998)). The plain meaning of "attributable to" is understood to be "due to, caused by, or generated by." *Id.* at 1331; *accord Candyce Martin 1999 Irrevocable Trust v. United States*, 739

---

[5] A "carryover" is an "income-tax deduction ([especially] for a net operating loss) that cannot be taken entirely in a given period but may be taken in a later period ([usually] the next five years)." *Black's Law Dictionary* (10th ed. 2014).

F.3d 1204 (9th Cir. 2014); *Stanford*, 152 F.2d at 458–59 (construing the phrase "attributable to such activity" according to its plain meaning, "due to, caused by, or generated by" the activity); *see also Braunstein v. Comm'r*, 374 U.S. 65, 70 (1963) ("If used in [its] ordinary meaning, ... the phrase 'attributable to' merely confines consideration to that gain *caused or generated by* the property in question." (emphasis added)). With this in mind, the Federal Circuit concluded that "it was the loss in 1994, not the carryback to 1993, that led to the carryover in 1995, and thus the 1995 overpayment." *Id.* at 1332. Therefore, there was no "comparable direct cause and effect relationship between Electrolux's 1993 carryback and its 1995 overpayment," and therefore, the 1995 overpayment was not attributable to the 1993 carryback, so the taxpayer could not take advantage of the special limitations period. *Id.* at 1332–33.

The Fifth Circuit has also previously interpreted "attributable to" according to its plain meaning: due to, caused by, or generated by. *Stanford*, 152 F.2d at 458–59. The Court finds *Electrolux* instructive here in determining whether Plaintiffs' 2002 overpayment is "attributable to any taxes paid or accrued to any foreign country." § 6511(d)(3)(a). In *Electrolux*, the Federal Circuit noted that for the longer limitations period to apply, the "fact of the overpayment . . . must be attributable to the carryback." 491 F.3d at 1332. Here, by analogy, for the ten-year limitations period to apply, the fact of the 2002 overpayment must be "caused by, generated by, or due to" taxes paid or accrued to any foreign country.

In their second amended 2002 return, Plaintiffs made three adjustments to their foreign tax credits relating to German tax liabilities; two were increases for their eligible foreign tax credit relating to taxes paid in Germany, and one was for a reduction in foreign tax credit. Together, these three adjustments resulted in a reduction in eligible foreign tax credits of approximately $1.5 million. Standing alone, these three adjustments would have resulted in a net

11

underpayment for the 2002 tax year. Plaintiffs' overpayment—and associated refund claim—is a result of their increased minimum tax credit for 2002, carried forward from the third amended 2001 return. Accordingly, the Court concludes that the 2002 overpayment was not caused by, generated by, or due to Plaintiffs' adjustment of their 2002 foreign tax credits, and therefore, Plaintiffs' 2002 overpayment was not "attributable to any taxes paid or accrued to any foreign country" in 2002, and the longer ten-year limitations period does not apply.

Plaintiffs argue that *Electrolux*'s holding regarding the meaning of "attributable to" has been superseded by the Supreme Court's decision in *United States v. Woods*, 134 S. Ct. 557 (2013). Plaintiffs maintain that *Woods* requires a broad construction of "attributable to," such that something could be attributable to more than one cause. In *Woods*, partnerships had been formed allegedly to avoid taxes by artificially overstating the tax bases[6] of the partnership interests of the partners. *Id.* at 561–62. After auditing the partnerships' tax returns, the IRS found that the partnerships had "no business purpose other than tax avoidance," and disregarded them for tax purposes, disallowing the partnerships' related paper losses. *Id.* at 561. Having done that, "the IRS determined that the partners had 'not established adjusted bases in their respective partnership interests in an amount greater than zero,' so that any resulting tax underpayments would be subject to a 40–percent penalty for gross valuation misstatements." *Id.* at 562 (citations omitted).

---

[6] "A partner's tax basis in a partnership interest—called 'outside basis' to distinguish it from 'inside basis,' the partnership's basis in its own assets—is tied to the value of any assets the partner contributed to acquire the interest." *Woods*, 134 S. Ct. at 561.

12

Under the Tax Code, taxpayers who underpay their taxes due to a valuation misstatement[7] may incur a 20% penalty, which applies to "the portion of any underpayment which is *attributable to* . . . [a]ny substantial valuation misstatement under chapter 1," or a 40% penalty if the valuation misstatement is deemed gross. 26 U.S.C. § 6662(a), (b)(3), (h)(1) (emphasis added); *Woods*, 134 S. Ct. at 565. In *Woods*, the taxpayer argued that any underpayment of tax was attributable "not to the misstatements of outside basis, but rather to the determination that the partnerships were shams," and accordingly, the taxpayer argued that the valuation misstatement penalty did not apply. 134 S. Ct. at 567. The Supreme Court rejected this argument, noting that this was not "a case in which a valuation misstatement [was] a mere side effect of a sham transaction"; instead, "the partners underpaid their taxes because they overstated their outside basis, and they overstated their outside basis because the partnerships were scams." *Id.* at 567–68. The partners' misstatements and the tax shelters' lack of economic substance were "inextricably intertwined," so that "attributing the tax payment only to the artificiality of the transaction and not to the basis overvaluation is making a false distinction." *Id.* Accordingly, the Supreme Court concluded that "any underpayment resulting from the . . . tax shelter [was] attributable to the partners' misrepresentation of outside basis (a valuation misstatement)." *Id.* at 568.

Plaintiffs argue that *Woods* applies a broad interpretation of "attributable to," such that "the fundamental assumptions of *Electrolux* regarding this clause have been superseded." Pls. Resp. at 15 n.39, 18. This Court disagrees. Nothing in the Supreme Court's analysis indicates

---

[7] Under the version of the penalty statute in effect when the transactions at issue in *Woods* occurred, "there is a substantial valuation misstatement under chapter 1 if . . . the value of any property (or the adjusted basis of any property) claimed on any return of tax imposed by chapter 1 is 200 percent or more of the amount determined to be the correct amount of such valuation or adjusted basis (as the case may be)." § 6662(e)(1)(A) (2000 ed.); *Woods*, 134 S. Ct. at 565.

13

that "attributable to" is to be used in any way other than its plain meaning. The Supreme Court's analysis of "attributable to" in *Woods* is consistent with the Federal Circuit's discussion of the term in *Electrolux*. Furthermore, the Supreme Court's decision in *United States v. Brockamp*, 519 U.S. 347 (1997), counsels against a broad interpretation of "attributable to" in the context of § 6511. In *Brockamp*, the Supreme Court considered whether the statutory time limitations in § 6511 can be tolled for nonstatutory equitable reasons, and held that they cannot. 519 U.S. at 348. The Court noted that "Section 6511's detail, its technical language, the iteration of the limitations in both procedural and substantive forms, and the explicit listing of exceptions, taken together, indicate to us that Congress did not intend courts to read other unmentioned, open-ended, 'equitable' exceptions into the statute." *Id.* at 352.

In support of their contention that their refund claim is timely, Plaintiffs urge the Court to follow the Seventh Circuit's decision in *First Chicago Corp. v. Commissioner*, 742 F.2d 1102 (7th Cir. 1984), a case considered by the Federal Circuit in its discussion in *Electrolux*:

> In *First Chicago Corp. v. Commissioner*, the taxpayer carried back a capital loss and an investment credit from 1974 to the 1971 tax year, causing a reduction in its 1971 income tax. The Commissioner later discovered a deficiency for the 1972 tax year because the taxpayer failed to adjust the minimum tax carryover for 1972 to account for the 1971 tax decrease. After the Commissioner issued a notice of deficiency for 1972, the taxpayer filed an action in the United States Tax Court, asserting that the statute of limitations for assessing a deficiency had expired.
> The Commissioner argued that the 1972 tax year was still open under 26 U.S.C. § 6501(h) and (j), a special statute of limitations then in effect. According to those provisions, the period for assessing a deficiency "attributable to" a capital loss carryback or investment credit carryback was the same as the period within which a deficiency for the year of the capital loss or investment credit could be imposed. Because the period for assessing a deficiency in 1974 had not expired, the Commissioner could still assess a deficiency for the 1972 tax year if it was "attributable to" the carrybacks from 1974.
> The Tax Court held that the 1972 deficiency was not attributable to the carrybacks from 1974 to 1971 and [that] there was no basis for construing the statute to include carryovers as well as carrybacks. *First Chicago Corp. v. Comm'r*, 80 T.C. 648, 652–55 (1983). Judge Whitaker dissented, explaining that the 1972 deficiency was "attributable to" the carrybacks from 1974 because it could be

14

> "traced directly to" the carrybacks. *Id.* at 665 (Whitaker, J., dissenting). On appeal, the Seventh Circuit reversed the Tax Court majority, adopting Judge Whitaker's dissenting opinion as its own. *First Chicago*, 742 F.2d at 1103.

*Electrolux*, 491 F.3d at 1331–32.

In urging that this Court apply the principles of *First Chicago* to this case, Plaintiffs argue that the minimum tax credit carryforward is an "'automatic mechanical adjustment' inseparably related to the 2002 foreign tax redeterminations." Pls. Resp. at 17. "The 2002 foreign tax redeterminations altered the foreign tax credits and because foreign tax credits directly impact the alternative minimum tax and minimum tax credit calculations, any change in foreign tax credits demands a corresponding change in the alternative minimum tax and minimum tax credit calculations." *Id.*

The Court finds Plaintiffs' reliance on *First Chicago* unpersuasive. Judge Whitaker characterized the 1972 adjustment as "an automatic mechanical adjustment due directly to the 1971 carryback" while discussing whether the IRS could reach back into a closed tax year to assess an additional deficiency stemming from a carryback. 80 T.C. at 664. There, the taxpayer carried back to 1971 a loss incurred in 1974, which resulted in recalculated 1971 tax liabilities and a resulting deficiency in 1972. Without the carryback to 1971, there would have been no deficiency in 1972. *Cf. Electrolux*, 491 F.3d at 1332 (discussing *First Chicago*). Here, without the minimum tax credit carryforward—not the foreign tax credit readjustments—there would have been no overpayment for the 2002 tax year. The 2002 overpayment was thus not "an automatic mechanical adjustment" due directly to the 2002 foreign tax credit readjustments; although the amount of the total overpayment differed due to the net reduction in 2002 foreign

15

tax credit, the 2002 overpayment was not due directly to the readjustment in foreign tax credits.[8] In general, the Court finds that Plaintiffs' use of the minimum tax credit carryforward is not inseparably related to their foreign tax redeterminations in the second amended 2002 return; while both the 2002 foreign tax redeterminations and the application of the minimum tax credit carryforward are necessary to determine Plaintiffs' correct tax liability for 2002, the 2002 foreign tax redeterminations have at best an indirect impact on the amount or existence of the minimum tax credit carryforward, which is determined by foreign tax credit and alternative minimum tax paid in prior years. Following the adjustments made in Plaintiffs' third amended 2001 return, the minimum tax credit carryforward would have existed for application in the second amended 2002 return even if the Plaintiffs had made no adjustments to their 2002 foreign tax credits. That the minimum tax credit carryforward and the foreign tax credit adjustments are both required to determine Plaintiffs' correct tax liability does not mean that both caused the 2002 overpayment.

Plaintiffs suggest that preventing them from claiming a refund for the 2002 overpayment somehow requires them to miscalculate their taxes. Pls. Resp. at 19. However, there is no limitations period on making adjustments to prior tax years to determine the correct liability in an open year. *Lewis v. Reynolds*, 284 U.S. 281, 283 (1932). The limitations periods set forth in § 6511 impose a limit on when a taxpayer may seek a refund, not make amendments to correct tax liability.

The Court finds, therefore, that because the 2002 overpayment was not attributable to adjustments in foreign tax credit, the 10-year statute of limitations in § 6511(d)(3)(a) does not

---

[8] Plaintiffs do not appear to argue that the minimum tax credit carryforward in 2002 is attributable to the foreign tax redeterminations in the third amended 2001 return for purposes of the special limitations period—i.e., they do not argue that the minimum tax credit carryforward can be traced to foreign tax redeterminations in 2001 as a basis for invoking the special limitations period. It is unclear whether tracing of this sort is permitted in the Fifth Circuit. However, as Plaintiffs seek to invoke the jurisdiction of the Court, they carry the burden to prove jurisdiction. *Thomson v. Gaskill*, 315 U.S. 442, 446 (1942). Because Plaintiffs have not raised this argument, the Court will not analyze it.

apply. Even so, Plaintiffs maintain that the special lookback provisions of § 6511(a) mean that their refund was still timely. Section 6511(a) provides that a claim for refund must be filed "within 3 years from the time the return was filed or 2 years from the time the tax was paid, whichever of such periods expires the later." § 6511(a). Plaintiffs' refund claim for the 2002 overpayment was filed on or about April 10, 2013, within two years of the filing of Plaintiffs' third amended 2001 return on or about April 7, 2012. Plaintiffs argue that their carryforward of the credits from the third amended 2001 return constitutes "payment" of tax under the two-year lookback rule, such that the claim for refund is timely. For support, Plaintiffs point to *Dresser Indus., Inc. v. United States*, 73 F. Supp. 2d 682 (N.D. Tex. 1999) (Kaplan, M.J.) (consent case), which considered whether the application of a foreign tax credit constituted a "payment" within the meaning of § 6511(a):

> "[A] tax is deemed to be paid . . . if an overpayment of one year is credited against a deficiency of another year." *Kingston Products, Corp. v. United States*, 177 Ct. Cl. 471, 368 F.2d 281, 287 ([Ct. Cl.] 1966). Thus, the application of a credit is treated in the same manner and has the same effect as a cash payment. *Republic Petroleum Corp. v. United States*, 613 F.2d 518, 525 & n.19 (5th Cir. 1980). The Court concludes that the application of a foreign tax credit constitutes a "payment" of taxes.

73 F. Supp. 2d at 687.

This Court declines to follow *Dresser* in this case. *Dresser* involved the readjustment of the taxpayer's liabilities in 1983, which created a foreign tax credit carryback to 1981, allegedly leading to the taxpayer's subsequent refund claim for 1981. *Id.* at 687. The taxpayer in *Dresser* paid its taxes for 1981 in 1993, and filed its 1981 refund claim in 1995, seeking to take advantage of the § 6511(a) two-year lookback period. *Id.* For § 6511(a) purposes, the *payment* of tax occurred in 1993; that the underlying basis for the refund claim was the application of foreign tax credits appears to have been of no consequence to the two-year lookback period, and

17

whether the application of foreign tax credits to the 1981 tax year constituted a payment appears to have been entirely irrelevant to the decision.

Furthermore, even assuming that the application of a foreign tax credit can constitute payment for the purposes of § 6511(a), Plaintiffs argue that the calculation of the minimum tax credit in the third amended 2001 return—not an adjustment to foreign tax credits—constitutes a payment of tax eligible to be refunded in the second amended 2002 return. Unlike in *Dresser*, where the taxpayer sought a refund of taxes it had paid in cash, Plaintiffs seek a refund on the basis of a computational credit, the minimum tax credit, designed to reduce tax liability because of AMT paid in prior years. Plaintiffs provide no authority to indicate that the calculation, or even the claiming, of a minimum tax credit carryforward constitutes a payment for the purposes of § 6511(a). Treating the computation and carryforward of the minimum tax credit on an amended return as a "payment" would appear to circumvent the "unusually emphatic" time limitations in § 6511, by permitting any refund claim based on a credit to be timely. *Cf. United States v. Brockamp*, 519 U.S. 347, 350 (1997). As the United States has consented to be sued for taxes improperly assessed or collected, but only if the jurisdictional requirements of § 6511 are satisfied, the Court declines to expand the scope of § 6511 beyond that which is clearly presented. *See Lane v. Pena*, 518 U.S. 187, 192 (1996) ("A waiver of the Federal Government's sovereign immunity must be unequivocally expressed in statutory text, and will not be implied. Moreover, a waiver of the Government's sovereign immunity will be strictly construed, in terms of its scope, in favor of the sovereign." (citations omitted)).

The Court concludes, therefore, that Plaintiffs' refund claim for the 2002 overpayment was not timely under § 6511, and therefore, their refund claim is barred.

## II. CONCLUSION

For the foregoing reasons, the Government's Motion to Dismiss for lack of subject matter jurisdiction is **GRANTED**.

**SO ORDERED.**

April 25, 2017.

_____
**BARBARA M. G. LYNN**
**CHIEF JUDGE**